UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PEGGY ANN BOURQUE, | |
| Plaintiff, | Case No. 3:17-cv-00281 |
| v. | Judge William L. Campbell, Jr. |
| BANK OF AMERICA, et al., | Magistrate Judge Newbern |
| Defendants. | |

To: The Honorable William L. Campbell, Jr., District Judge

## REPORT AND RECOMMENDATION

Pending before the Court are four motions to dismiss Plaintiff Peggy Ann Bourque's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. These motions were filed by Defendants Seterus, Inc. (Seterus) (Doc. No. 58); Dwayne Hampton (Doc. No. 63); Bank of America, N.A. (BANA) (Doc. No. 71); and Harry Tinsley, his spouse, and estate (collectively, Tinsley) (Doc. No. 75). Bourque, proceeding pro se, has filed one response to the four motions. (Doc. No. 81.) For the reasons given below, the Magistrate Judge RECOMMENDS that Defendants' motions to dismiss be GRANTED.

**I. Background**

This action is brought under the Fair Debt Collection Practices Act and alleges a conspiracy to defraud Bourque beginning with the October 15, 2006 sale of real property to her at a fraudulently inflated purchase price and culminating in unlawful collection efforts and a foreclosure sale following her default on the mortgage. In response to the filing of the original complaint on February 13, 2017, by Bourque and her son and co-plaintiff Rodger Dudley Mason

(Doc. No. 1), Defendants Seterus, Hampton, BANA, and Tinsley filed motions to dismiss that are substantially similar to their currently pending motions. Bourque and Mason subsequently moved for leave to amend the complaint, and Defendants' motions were denied without prejudice to refiling based on the amended pleading. (Doc. No. 46, PageID# 458.)

On July 17, 2017, Bourque filed an Amended Complaint (Doc. No. 56) that no longer identifies Mason as a plaintiff or bears his signature. The docket reflects that Mason was terminated as a plaintiff on the date the Amended Complaint was filed. Defendants refiled their motions to dismiss. Bourque responded in opposition on grounds that the motions had previously been denied by the Court and that they "are generally presented in bad faith and full of deceitful misrepresentations[.]" (Doc. No. 81.)

## II. Bourque's Amended Complaint

Bourque alleges that she entered into a verbal agreement with Tinsley to purchase property in Lebanon, Tennessee for the price of "$45,000.00 plus costs," with closing in sixty days and designated repairs to be completed by Tinsley prior to closing. (Doc. No. 56, PageID#545–46, ¶ 11.) The closing took place on October 15, 2006, when Bourque's son, Mason, represented Bourque under a power of attorney "with Defendant Hampton in attendance as the closing agent/broker." (*Id.* at PageID# 546, ¶ 12.) "Mason was fully authorized to sign for [Bourque] as agent on all closing documents presented to him by Hampton." (*Id.*) During the closing, Hampton told Mason that "[a]ll the paper work is in order, just sign here, and here," and that "[y]our mother has already agreed to everything, she voluntarily waived the inspection of the property." (*Id.* at PageID# 547, ¶ 15.) Based upon Tinsley's representations prior to closing Hampton's representations at the closing, Bourque (through Mason) closed on the property on October 15, 2006. (*Id.* at ¶ 17.) However, Bourque alleges that Mason was "verbally pressured and physically

2

intimidated" by Hampton into signing the documents without adequate time to inspect them. (*Id.* at PageID# 549–50, ¶¶ 24, 30.)

On the Warranty Deed issued approximately two days after closing "Gary Willis" was listed as the seller and the purchase price was listed at over $88,000.00. (*Id.* at PageID# 548, ¶ 21; *see also* Doc. No. 58-1, PageID# 670.) Bourque alleges that Tinsley willfully failed to disclose to Bourque or Mason that Willis was "the true owner of the house affixed to the property." (Doc. No. 56, PageID# 548, ¶ 22.) She alleges that Tinsley and Hampton conspired "to cover the payment at closing, to the True Seller [Willis], with an extra credit application for a mortgage rider in the amount of $17,000.00." (*Id.* at PageID# 548–49, ¶ 23.) Bourque also alleges that Tinsley never completed the promised repairs, leaving her to complete the repairs over the course of a year after closing at substantial cost to her. (*Id.*)

Bourque alleges that Hampton's access to an "established lending network and brokerage tools" enabled him, with Tinsley, "to forge [Bourque's] signature on a pre-approval application that was later used as the basis for the creation of a mortgage rider loan agreement" and was included in the closing documents signed by Mason; that agreement increased Bourque's indebtedness on the property by $17,000.00 over the $45,000.00 plus costs that Bourque agreed to. (*Id.* at PageID# 550, ¶¶ 27–28.) Bourque alleges that Hampton and Tinsley succeeded in concealing the second mortgage loan "for a period of four months after closing." (*Id.* at PageID# 552, ¶ 36(a).) Hampton allegedly structured the loan so that the second mortgage principal and interest would be paid before the first mortgage amount of $45,000.00, "effectively making the second mortgage rider loan disappear in the course of [Bourque's] payments in the first year." (*Id.* at PageID# 553, ¶36(b).)

Bourque "was first made aware of the fraud a few months after the closing, when her son Mason called her . . . to inform her that a 'Credit Card' had arrived in the mail" with "a statement of balance due and owing . . . bearing the amount of $17,000.00." (*Id.* at ¶ 37.) Bourque asserts that, if this additional indebtedness had been properly disclosed in advance of or at the time of closing, she would not have agreed to its terms. (*Id.* at ¶ 38.) She alleges harm due to the fraud perpetrated during this transaction, the resulting collection activity, and the eventual foreclosure of the loan and sale of the property. (*Id.* at PageID# 553–54, ¶ 39.) Bourque alleges that Defendants BANA, Seterus, and others engaged in "collection activity" and "negative reporting on her credit," while failing or refusing "to investigate and/or validate the alleged mortgage debt," thereby causing her to make "[e]ight years of erroneous payments" to BANA and Seterus. (*Id.* at PageID# 554, ¶¶ 40–42.) She alleges that, despite BANA's statement that an investigation into the alleged fraud would be opened, "[n]o investigation was had by the time [BANA] assigned the alleged mortgage debt over to Defendant [Seterus] during 2015." (*Id.* at PageID# 555, ¶ 43.) Seterus also allegedly promised to open an investigation, but failed to do so prior to assigning the debt collection account to Priority Trustee Services of Tennessee, LLC, Stephen Routh, and RCO Legal, P.S. (*Id.* at ¶¶ 44–45, 47.) Despite Bourque's demands that BANA, Seterus, and these other Defendants cease and desist their communications with her, the collection efforts continued in the form of multiple delinquency notices containing "duplicate, confusing, and/or misleading account information," as well as "harassing and unlawful telephon[e] communications from Defendants to [Bourque's] landline phone consistently start[ing] around 7am EST in the morning, during lunchtime, during dinner, and occasionally after 9pm EST at night." (*Id.* at PageID# 556–57, ¶¶ 49–53.)

Bourque summarizes her allegations of Defendants' wrongdoing as follows:

> The fraudulent closing scheme of Defendants' Tinsley and Hampton was materially furthered and/or knowingly or willfully participated in by Defendant(s) [BANA, Seterus, et al.] when, each of those latter defendants were given notice by Plaintiff of the Fraud and Conspiracy; yet continued their collection activity, failed to investigate, and thereafter continued their application of Plaintiff's payments to the second "credit line" instead of [principal, interest, taxes and insurance] towards the original Mortgage Balance of $45,000.00 for nearly Ten (10) Years respectively.

(*Id.* at PageID# 558, ¶ 56.) Based on these allegations, Bourque asserts state law claims of civil conspiracy and fraud (including fraud in the factum and fraudulent concealment) against Hampton and Tinsley, and a claim to quiet title with a corresponding request for declaratory judgment regarding title and possession of the property against all Defendants. (*Id.* at PageID# 560–73.) She further asserts a claim for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, against BANA, Seterus, Priority Trustee Services of Tennessee, LLC, Stephen Routh, and RCO Legal, P.S. (*Id.* at PageID# 573–77.) She asserts her right to damages against all Defendants. (*Id.* at PageID# 578–79.)

### III.     Legal Standard

Defendants' motions seek dismissal for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In deciding a Rule 12(b)(6) motion, the Court must view the complaint in the light most favorable to the plaintiff, and accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, the plaintiff must allege sufficient facts to show that the claim is "plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A plaintiff must plead more than "labels and conclusions," "a

formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Finally, "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## IV. Analysis

As a preliminary matter, Bourque's one-page response to the motions to dismiss is misinformed on one count: she states that the pending motions should be denied because they are "essentially . . . a 'regurgitation' of the original motions to dismiss that were denied by this court." (Doc. No. 81, PageID# 915.) The merits of these Defendants' original motions to dismiss were not considered and denied by the Court; rather, their motions were denied as moot without prejudice because Borque filed an amended complaint. (Doc. No. 46, PageID# 458.) Accordingly, Defendants' arguments for dismissal are properly renewed in their currently pending motions. Moreover, Bourque's objections that the motions to dismiss "are generally presented in bad faith and full of deceitful misrepresentations" and are "frivol[ous] and fail[] to establish any proof of affirmative defenses" are not substantial. The assertions of bad faith and frivolity are entirely conclusory, while the assertion of lack of proof of affirmative defenses misapprehends the Defendants' burden under Rule 12. It would not be proper for Defendants to submit proof outside of the complaint in seeking dismissal under Rule 12(b)(6),[1] other than documents that are both

---

[1] "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under

referenced in the complaint and central to its claims. *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999). Such documents that are so integral to the complaint as to be considered a part of the pleading may be introduced by the defendant in support of a motion to dismiss. *Id.* Defendants are limited to these foundational documents in seeking to demonstrate that, assuming the truth of Bourque's factual allegations, no plausible claim to relief can be stated, *Iqbal*, 556 U.S. at 678.

A. **Claims Against All Defendants**

Bourque asserts the existence of a controversy between herself and all Defendants "over the Title and/or Lawful Possession of the real property" at issue, and therefore requests "declaratory relief [to] clarify the rights and obligations of the parties" as well as "rescission of the entire loan transaction for fraud." (Doc. No. 56, PageID# 573, ¶¶ 120, 122.) The request for declaratory relief also corresponds to her claim to the remedy of quiet title. Each of the moving Defendants argues that these remedies are unavailable to Bourque. The Court agrees.

Bourque alleges that she and Mason enjoyed "continuous, uninterrupted adverse possession of The Property for over Ten (10) years" as they "acquired actual or real possession/control of said real property after Oct. 15th 2006," and held such possession "until their unlawful eviction on/or about December 15th, 2016." (*Id.* at PageID# 571–72, ¶¶ 115–16.) "A party wishing to obtain quiet title must plead that she has superior title against any other claimants." *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). Based on her possession of the property, Bourque asserts "a superior claim to title against all defendants" by virtue of a "duly recorded and filed . . . notice of lis pendens in Wilson County, Tennessee." (*Id.* at ¶¶ 116–17.)

---

Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

However, "Tennessee is a 'title theory' state," which means that "[w]hen a borrower obtains a mortgage loan to buy the house, the lender, the holder of the note, has title to the property." *Thompson*, 773 F.3d at 750. "The borrower must satisfy her mortgage debt in order to obtain title"; until such time, "the holder of the note has superior title to the property." *Id.* at 751.

It is undisputed that Bourque was not able to satisfy her mortgage debt. While she has alleged that she has superior title via adverse possession, in Tennessee this common law doctrine "rests upon the proposition 'that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed.'" *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366, 376–77 (Tenn. 2007) (quoting *Ferguson v. Prince*, 136 Tenn. 543, 190 S.W. 548, 552 (Tenn. 1916)). Not only has Bourque not possessed the property for twenty years, she could not assert a presumptive deed to the property where her ownership interest was explicitly established under the terms of a mortgage. The statutory forms of adverse possession, Tenn. Code Ann. § 28-2-101 *et seq.*, recognize this and explicitly do not apply to possession "taken and continued under a title bond, mortgage or other instrument acknowledging that right or interest. . . ." Tenn. Code Ann. § 28-2-108. The Amended Complaint demonstrates that Bourque has never held superior title to the property. The request for declaratory relief on this issue is therefore without merit.

As to Bourque's request for declaratory relief on the issue of fraud in the real estate transaction, her claims against Hampton and Tinsley are a better vehicle for adjudicating the rights and obligations of the parties. The Court considers Bourque's fraud allegations in that context. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 562 (6th Cir. 2008) ("A district court should deny declaratory relief if an alternative remedy is better or more effective.").

**B.   Claims Against Hampton and Tinsley**

Hampton and Tinsley, the alleged perpetrators of the fraudulent real estate transaction, raise several arguments for dismissal of Bourque's claims against them. Although these defendants' motions are independent of each other, they both make the argument that Bourque's state law fraud and conspiracy claims—based on Tinsley's verbal agreement to a lower purchase price and more seller's obligations than the closing documents recognize, Hampton's misleading and intimidating conduct at the closing, and the pair's forging of Bourque's signature and surreptitious application for a $17,000.00 second mortgage in her name—are barred by the applicable statutes of limitation. According to the Amended Complaint, Bourque discovered the extent of her indebtedness by early 2007. (Doc. No. 56, PageID# 552–53, ¶¶ 36(a), 37.) She did not file this suit until February 13, 2017, ten years later.

Where a statute of limitations defense is established by the allegations of the complaint, dismissal for failure to state a claim is appropriate. As the Sixth Circuit has explained,

> The statute of limitations is an affirmative defense, *see* Fed.R.Civ.P. 8(c), and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim, *see* Fed.R.Civ.P. 8(a) (requiring "a short and plain statement *of the claim*" (emphasis added)); *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations. But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case, as it is here, dismissing the claim under Rule 12(b)(6) is appropriate. *See Jones*, 549 U.S. at 215, 127 S.Ct. 910 ("If the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]").

*Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); a*ccord Jelletich v. Pawlawski*, No. 5:14-CV-00017, 2014 WL 5782549, at *3 (W.D. Ky. Nov. 6, 2014) ("Although Rule 12(b) does not specifically address motions to dismiss based on the alleged expiration of the applicable statute of limitations, a complaint that shows on its face that relief is barred by the affirmative defense of the statute of limitations is properly subject to a Rule 12(b)(6) motion to dismiss[.]").

Under Tennessee law, "[t]he statute of limitations for a given action will be determined 'according to the gravamen of the complaint.'" *Moorhead v. Allman*, No. M2009-01822-COA-R3CV, 2011 WL 676017, at *5 (Tenn. Ct. App. Feb. 24, 2011) (quoting *Vance v. Schulder*, 547 S.W.2d 927 (Tenn. 1977)). Here, the gravamen of this claim is fraud in the inducement of a contract,[2] "the old common law action of deceit," based on "face to face misrepresentations of material facts" that induced Mason to commit Bourque to a higher-than-bargained-for purchase price. *Vance*, 547 S.W.2d at 931. Bourque asserts that "there is no Statute of Limitations on Fraud" (Doc. No. 56, PageID# 546, ¶ 8), but she is incorrect. Tennessee courts hold that an action to recover for economic loss based on fraud in the inducement of a contract involves an "injury to personal property" and "is therefore subject to [Tenn. Code Ann.] § 28-3-105's three year limitations period." *Moorhead*, 2011 WL 676017, at *5 (citations omitted).

While Bourque alleges fraudulent concealment of the misconduct giving rise to her cause of action, she also alleges that, despite Hampton and Tinsley's concealment, she discovered the extent of her indebtedness procured by fraud within months of the 2006 closing. "As it currently exists in Tennessee, the doctrine of fraudulent concealment is aligned with the discovery rule." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 462 (Tenn. 2012). Under this doctrine, "the statute of limitations is tolled when 'the defendant has taken steps to prevent the plaintiff from discovering he [or she] was injured.' While other decisions couch the fraudulent concealment doctrine in terms of the defendant taking affirmative steps 'to conceal the cause of

---

[2] Bourque alleges "fraud in the factum" as a component of her claim against Hampton and Tinsley. However, fraud in the factum—"the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents," *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 489 (6th Cir. 2001)—is appropriately raised as a defense to the enforcement of a contractual obligation. *Fed. Deposit Ins. Corp. v. Turner*, 869 F.2d 270, 274 (6th Cir. 1989). Its allegation here neither precludes the statute of limitations defense nor requires application of a different statute.

10

action,' the reference to 'cause of action' in this context is synonymous with the plaintiff's injury." *Id.* (citations omitted). "It is the original injury which is the cause of action" and which marks the accrual date from which the statute begins to run; "the damage sustained is not the cause of action." *Id.* at 462 n.28 (quoting *Albert v. Sherman*, 167 Tenn. 133, 138, 67 S.W.2d 140, 141 (Tenn. 1934)). Thus, Bourque's allegation in support of her civil conspiracy claim that Hampton and Tinsley's fraud and harassment resulted in damage or injury "which compounded and persisted for a time period of Ten (10) years to present," culminating in the foreclosure and her loss of possession of the property (Doc. No. 56, PageID# 563–64, ¶ 75(v)), does not extend the starting point for the running of the statute of limitations beyond the date she discovered her injury. If the three-year clock began to run in early 2007—or even if, in the best case scenario for Bourque, the Amended Complaint were construed as presenting a claim for breach of the oral contract between Bourque and Tinsley, which would be governed by the four-year limitation period of Tenn. Code Ann. §47-2-725—the 2017 filing of this action was not timely.

"[A] civil conspiracy . . . is neither a punishable offense standing alone nor a wrong capable of supporting a cause of action by its own weight. Consequently, the procedural law applicable to the gravamen of the complaint applies to the civil conspiracy claim." *Swafford v. Memphis Individual Practice Ass'n*, No. 02A01-9612-CV-00311, 1998 WL 281935, at *11 (Tenn. Ct. App. June 2, 1998). Therefore, Bourque's claim of a civil conspiracy to commit the "fraudulent closing scheme" (Doc. No. 56, PageID# 561–63) is governed by the three-year statute of limitations applicable to the fraud claim, Tenn. Code Ann. § 28-3-105. *See id.* at *11–12 (citing *Braswell v. Carothers*, 863 S.W.2d 722, 725 (Tenn. Ct. App. 1993)). Assuming that Bourque has adequately pleaded the elements of a civil conspiracy claim, that claim, along with the underlying fraud claim, is also untimely.

Because the applicable statutes of limitations bar Bourque's claims against Hampton and Tinsley, the Court declines to consider the alternative arguments for dismissal raised by these Defendants. Further, there are no grounds for finding that any other Defendants are appropriately included in the long-stale claim of a civil conspiracy to defraud Bourque based on their more recent collection activity or failure to investigate after Bourque notified them of her allegations against Hampton and Tinsley. (Doc. No. 56, PageID# 558, ¶ 56.) Bourque's statutory claim as to BANA and Seterus's activities related to collection of her debt is addressed below.

### C. Claim Against BANA and Seterus

Bourque claims that BANA, Seterus, Priority Trustee Services of Tennessee, LLC (Priority), Stephen Routh, and RCO Legal, P.S. (RCO) violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, by "engaging, overseeing, and/or continuing to engage Plaintiff . . . in collection activity by their use of threatening letters, [F]ed[E]x deliveries of the same document three times a week, telephonic calls that did not cease, and other unlawful conduct . . ." (Doc. No. 56, PageID# 574.)[3] The FDCPA is an extraordinarily broad statute that was enacted to address a widespread problem of "abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a); *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). "The Act prohibits a wide array of specific conduct, but it also prohibits, in general terms,

---

[3] Priority and RCO have filed their answer to the Amended Complaint (Doc. No. 85), in which they admit to acting at times as "debt collectors" under the FDCPA (*id.* at PageID# 942, ¶ 125), but otherwise deny that they violated the statute in any of the ways alleged by Bourque. (*Id.* at PageID# 932–34, 942–44, ¶¶ 48–57, 123–33.) The record reflects that Bourque's process server attempted to serve Routh by U.S. Mail at what appears to be the business address for Priority and RCO in Atlanta, Georgia. (Doc. No. 30.) Routh has not filed an answer or otherwise appeared in this action.

any harassing, unfair, or deceptive debt collection practice, which enables 'the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.'" *Currier*, 762 F.3d at 533 (quoting S. Rep. No. 95–382, at 4, 1977 U.S.C.C.A.N. 1695, 1698). Courts analyze particular conduct alleged to violate the FDCPA using an objective standard of the "least sophisticated consumer," which protects the broadest range of consumers while also safeguarding debt collectors from liability premised upon subjective interpretations of collection notices that are unreasonable or idiosyncratic.[4] *Id.* (citing *Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008)).

The Amended Complaint alleges that these defendants committed various FDCPA violations collectively, in that all five: "repeadedly call[ed] . . . before 8am or after 9pm, and also more than three (3) times a week" in violation of §§ 1692c and 1692d; called Bourque and Mason at their workplaces in violation of § 1692c; called family members in an attempt to locate Bourque and Mason in violation of § 1692b and § 1692c; attempted to collect on a debt they had been told was fraudulent and invalid, and misrepresented the amount of the debt in their calls and letters in violation of § 1692e; pretended to investigate the debt while continuing collection efforts, and made harassing threats "including but not limited to 'you'd better pay up today or we are gonna come over there and take all of your sh**'" in violation of §§ 1692c, 1692d, and 1692e; leaving multiple voicemail messages that were incomplete and did not identify the caller in violation of § 1692e; threatened to sue and foreclose against Bourque "without any valid right to do so" in violation of § 1692e; and harassed and yelled at Bourque and Mason over the phone in violation of § 1692d. (*Id.* at PageID# 575–76, ¶ 130.) Bourque also attributes one specific telephone

---

[4] Neither BANA nor Seterus assert that they are not debt collectors for purposes of the FDCPA.

communication each to BANA ("When the F*** Are You Going To Pay Your Mortgage?") and Seterus ("You wanna lose your house dumba**? Cause we'll take it from you like that (snaps fingers on phone)"). (*Id.* at PageID# 557, ¶ 54.)

BANA and Seterus both note that, although Bourque alleges specific misconduct in violation of multiple sections of the FDCPA (*id.* at PageID# 573–77, ¶¶ 126, 130, 131), she does not specify which defendant engaged in which action that violated the statute, but instead lumps all five defendants together as responsible parties. Both BANA and Seterus argue that Bourque's nonspecific allegations render her FDCPA claim implausible and therefore subject to dismissal under *Iqbal*.

The Court has no trouble finding that the communications alleged by Bourque generally "fall[] within the broad scope of practices" prohibited by the statute as they relate to collection of a debt. *Currier*, 762 F.3d at 533. Moreover, the particular telephone communications attributed to BANA and Seterus (Doc. No. 56, PageID# 557, ¶ 54) could objectively be viewed under the least sophisticated consumer standard as involving "[t]he use of obscene or profane language or language the natural consequence of which is to abuse the hearer[.]" 15 U.S.C. § 1692d(2). However, to establish these FDCPA violations, Bourque must show not only that she is a "consumer" and that Defendants are "debt collectors" as defined in the statute, but also that "the 'debt' arises out of a transaction which is 'primarily for personal, family or household purposes.'" *Estep v. Manley Deas Kochalski*, LLC, 942 F. Supp. 2d 758, 766 (S.D. Ohio 2013), *aff'd*, 552 F. App'x 502 (6th Cir. 2014) (quoting 15 U.S.C. § 1692a(5) and *Wallace v. Washington Mutual Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012)).

In *Estep*, the district court noted that the plaintiffs' allegation that they were "consumers" did not suffice to allege that they were "consumers in relation to the debt which is the subject of

14

the foreclosure action." The court found that the FDCPA defined "consumer" as "any natural person obligated or allegedly obligated to pay any debt," but then proceeded "to narrow the type of debt which qualifies for protection" to debts "primarily for personal, family, or household purposes." *Id.* at 767. With these definitions in mind, the *Estep* court examined the allegations of the complaint before it:

> Plaintiffs alleged in their complaint that they reside at the premises. However, they have not alleged that they incurred the debt to purchase the property primarily for personal, family, or household purposes, as opposed to some other purpose, such as for a business investment. The fact that they are currently residing at the property is not sufficient to allege that they acquired the property primarily for personal, family, or household purposes. For example, it is possible for a consumer to acquire property primarily to generate income as rental property, but then to use it later as a temporary residence while moving from one residence to another or while awaiting the construction of the consumer's primary residence.

*Id.*

In the Amended Complaint, Bourque alleges that she was a retired businesswoman living in North Carolina at the time that she "entered into a joint venture with her entrepreneur son and business partner [Mason] for the purchase of the [property]." (Doc. No. 56, PageID# 539, ¶ 2.) The Amended Complaint further describes Mason as "joint venturer and property caretaker." (*Id.* at PageID# 539–40.) Bourque and Mason are alleged to be "consumers" for purposes of the FDCPA (*id.* at PageID# 546, ¶ 9), but there is no allegation that Bourque bought the property as a residence for herself or Mason, that either ever actually resided there, or that the debt was incurred for any purpose other than to acquire rental or investment property "per the terms of their joint venture." (*Id.* at PageID# 571, ¶ 116(a).) The declarations of Bourque and Mason, attached to the Amended Complaint,[5] confirm the business purpose behind Bourque's acquisition of the property

---

5     "Even though Rule 12(b)(6) scrutiny is limited to the pleadings, the pleadings . . . include . . . exhibits attached to the complaint, as well as exhibits attached to defendants' motion to dismiss

and related debt. (*Id.* at PageID# 598, 602–03.) It thus does not appear from Bourque's pleadings that the debt at the heart of her FDCPA claim meets the statutory definition that would entitle her to protection from abusive collection practices.

BANA and Seterus further point out Bourque's allegation that these FDCPA violations occurred "[f]rom a time period of December 2008 to present[.]" (*Id.* at PageID# 574, ¶ 126.) BANA asserts that that the Amended Complaint does not plausibly allege a FDCPA violation because, "nowhere does Bourque allege when exactly the alleged violations took place[.]" (Doc. No. 72, PageID# 853.) Seterus further asserts that any allegations of misconduct occurring prior to February 13, 2016, would be barred by the FDCPA's one-year statute of limitations, 15 U.S.C. § 1692k(d). (Doc. No. 59, PageID# 714, n.7.)

Section 1692k(d) provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Application of this limitations period to the types of unfair-debt-collection practices that Bourque alleges—i.e., harassing phone calls, misleading correspondence, etc.—is straightforward because such practices "are easily dated to the time of the violation," unlike the institution of legal proceedings to collect the debt. *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 463 (6th Cir. 2013). While her allegations of FDCPA violations do not identify any particular dates on which such violations occurred, Bourque states in her declaration attached to the Amended Complaint that BANA "serviced the loan for nearly seven years and engaged me in unlawful collection activity from 2008 to around 2015 when they

---

that are referred to in the complaint." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011).

assigned my 'account' over to [Seterus]." (Doc. No. 56, PageID# 600, ¶ 9.) Because Bourque does not appear to allege any further debt collection efforts by BANA after 2015, she has not asserted a timely FDCPA claim against BANA.

It is not clear from the Amended Complaint or any of its attachments that Bourque cannot state a timely claim of Seterus's violation of the FDCPA. Neither is it clear from the pleadings that her allegations are timely. However, the Court need not resolve whether timeliness is an appropriate ground for dismissal. Because Bourque's claim does not involve a "debt" as defined in the FDCPA, she has not stated a claim under that statute.

## V.  Recommendation

In light of the foregoing, the Magistrate Judge RECOMMENDS that Defendants' motions to dismiss (Doc. Nos. 58, 63, 71, 75) be GRANTED.

Any party has fourteen days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 29th day of March, 2018.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge